IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHERYL SHOCKLEY, JUNE SCHINDLER,
TREVOR HILLSTROM, SARAH HAAS, and
KIRK GUSTUM,

                Plaintiffs,

v.

CLARITY SERVICES, INC, and KMD WISCONSIN,
LLC, d/b/a CREDIT NINJA,

                Defendants.

OPINION and ORDER

21-cv-431-jdp

---

    Plaintiffs are Wisconsin consumers who allege that defendant Clarity Services, Inc., released their credit reports to defendant Credit Ninja, an online lending company, without their consent. They bring claims under the Fair Credit Reporting Act against Clarity for unlawfully furnishing their reports and against Credit Ninja for unlawfully obtaining their reports. They also assert claims under the Wisconsin Consumer Act and Wisconsin's privacy statute against Credit Ninja.

    Two matters are before the court. First, Credit Ninja moves to dismiss plaintiffs' complaint under Rule 12(b)(6) for failure to state a claim. Dkt. 16.[1] Second, Clarity moves to dismiss plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process. Dkt. 21. For the reasons that follow, the court will grant Credit Ninja's motion to dismiss only in part, and it will give plaintiffs a short time to amend their complaint

---

[1] Plaintiffs move to strike portions of Credit Ninja's brief in support of its motion, contending that it mischaracterizes the allegations in plaintiffs' complaint. Dkt. 38. "Motions to strike words, sentences, or sections out of briefs serve no purpose except to aggravate the opponent." *Redwood v. Dobson,* 476 F.3d 462, 471 (7th Cir. 2007). The motion is denied.

to address deficiencies in their Wisconsin Consumer Act claim. The court will deny Clarity's motion to dismiss for insufficient service of process. But plaintiffs' allegations against Clarity are nearly identical to allegations plaintiffs made in other lawsuits in this court that the court concluded did not state a claim. The court will give plaintiffs a short time to show cause why their claims against Clarity should not be dismissed on the merits.

ANALYSIS

**A. Credit Ninja's motion to dismiss**

Plaintiffs assert claims under the Fair Credit Reporting Act (FCRA), Wisconsin's privacy statute, and the Wisconsin Consumer Act. Credit Ninja moves to dismiss all three causes of action for failure to state a claim.

**1. Fair Credit Reporting Act claims**

Plaintiffs contend that Credit Ninja obtained their credit reports in violation of the FCRA. They allege that Credit Ninja viewed their credit reports a combined 29 times even though none of them approached Credit Ninja for a loan or authorized Credit Ninja to view their report. Under the Fair Credit Reporting Act (FCRA), an entity may obtain a credit report only for an enumerated permissible purpose. 15 U.S.C. § 1681b(f). One such permissible purpose is to "use the credit report in connection with a credit transaction involving the consumer . . . and involving the extension of credit to . . . the consumer." § 1681b(a)(3)(A). If the transaction in question was initiated by the consumer, entities participating in the transaction can obtain the consumer's report without his or her authorization. *See* § 1681b(c); *Stergiopoulos & Ivelisse Castro v. First Midwest Bancorp, Inc.*, 427 F.3d 1043, 1046 (7th Cir. 2005).

Credit Ninja contends that plaintiffs have pleaded themselves out of court by alleging facts to show that Credit Ninja used their reports in connection with credit transactions that involved the plaintiffs. A lender may request a credit report without the consumer's consent if there is "a direct link between a consumer's search for credit and the [lender's] credit report request." *Stergiopoulos,* 427 F.3d at 1047. Here, plaintiffs allege that over the "past several years," they each separately approached various short-term, high-interest lenders to arrange short-term loans. Dkt. 11, ¶ 90. Plaintiffs also allege that, as a general matter, payday lenders sell information about the consumers who approach them to other payday lenders, and the secondary lenders will then access the consumer's credit report without their consent. Credit Ninja contends that it is reasonable to infer that another lender forwarded plaintiffs' applications to Credit Ninja, and Credit Ninja pulled plaintiffs' reports to determine if it would offer them credit.

The court agrees with Credit Ninja that one reasonable inference from plaintiffs' allegations is that Credit Ninja obtained plaintiffs' credit reports as a result of a credit request to a third party. But in evaluating Credit Ninja's motion to dismiss under Rule 12(b)(6), the court views the allegations in the complaint in the light most favorable to the plaintiffs and draws all reasonable inferences in their favor. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012). Plaintiffs do not expressly allege that Credit Ninja's credit pulls are related to the credit applications that they made to other lenders. Nor do they allege that Credit Ninja pulled plaintiffs' reports to decide whether to offer them credit. In the cases Credit Ninja cites, the plaintiffs admitted in the complaint that the defendant obtained the plaintiff's credit report to investigate a credit application that the plaintiff had submitted to a third party. *Kowalkowski v. Francois Sales & Servs., Inc.*, No. 18-CV-721-SLC, 2019 WL 2189484, at *2

3

(W.D. Wis. May 21, 2019); *Hutar v. Capital One Fin. Corp.*, No. 15-2100 (MJD/JJK), 2015 WL 4868886, at *2 (D. Minn. July 27, 2015). Plaintiffs here do not admit that Credit Ninja received their credit applications, and the court cannot draw that inference in Credit Ninja's favor. The question of whether Credit Ninja viewed plaintiffs' reports because of plaintiffs' loan applications would have to be resolved at summary judgment or trial.

2. **Invasion of privacy**

Plaintiffs bring a state-law invasion of privacy claim against Credit Ninja. In Wisconsin, "invasion of privacy" means a highly offensive intrusion upon another's privacy in a place a reasonable person would consider private or in a manner actionable for trespass, among some other things not relevant here. *Ladd v. Uecker*, 2010 WI App 28, ¶20, 323 Wis. 2d 798, 810, 780 N.W.2d 216, 222 (citing Wis. Stat. § 995.50(2)). The parties cite no Wisconsin authority on whether improperly accessing a credit report is a "highly offensive" intrusion of privacy. But the Restatement of Torts provides that examining someone's bank account could sustain an invasion of privacy claim. *See* Restatement (Second) of Torts, § 652B. A credit report contains similar financial information, so plaintiffs' allegations state a plausible invasion of privacy claim.

Credit Ninja objects to this claim on similar grounds to the FCRA claim, contending that viewing a credit report does not violate a consumer's right to privacy so long as it has a statutorily permissible purpose. Because plaintiffs' allegations do not show that Credit Ninja had a permissible purpose to view their reports, this argument fails. Credit Ninja also contends that the FCRA preempts invasion of privacy claims. But the portion of the FCRA it cites is about disclosures of credit information to consumer reporting agencies, *see* 15 U.S.C. § 1681h(e); it doesn't address claims for accessing a credit report under § 1681b(f). *See Purcell*

4

*v. Bank of Am.,* 659 F.3d 622, 625 (7th Cir. 2011) *(*"Section 1681h(e) preempts some state claims that could arise out of reports to credit agencies").

### 3. Wisconsin Consumer Act

Plaintiffs contend that Credit Ninja violated several provisions of the Wisconsin Consumer Act (WCA) that regulate "credit services organizations." Specifically, they contend that Credit Ninja: (1) charged money for referring a consumer to a lender who offers the consumer the same credit terms as available to the general public, in violation of Wis. Stat. § 422.503(1)(a); (2) made misleading representations in the offer or sale of their services, in violation of Section 422.503(1)(c); (3) did not register with the state as required by Section 422.502.

Credit Ninja disputes that any of these regulations apply, on the grounds that it is not a credit services organization. The WCA defines a credit services organization as a person or merchant that, in exchange for valuable consideration, helps consumers improve their credit rating or facilitates credit transactions between consumers and lenders. Wis. Stat. § 422.501(2)(a). The definition expressly excludes "person[s] holding a license or authorization certificate to make loans or extensions of credit." Wis. Stat. § 422.501(2)(b)(1).

Plaintiffs plausibly allege that Credit Ninja operated as credit services organization, at least prior to 2021. They allege that Credit Ninja is paid to broker loans and arrange credit transactions on behalf of consumers and that Credit Ninja was not licensed to make loans to Wisconsin consumers before 2021. Credit Ninja contends that it is not a credit services organization because it is and was primarily a lender, not a broker. But that's not what plaintiffs allege, and at the motion to dismiss stage, plaintiffs' allegations are what matter.

5

But plaintiffs haven't stated any claims under the WCA. Plaintiffs don't plausibly allege that Credit Ninja violated § 422.503 by misleading them or improperly charging money for a referral. At the end of their complaint, in the section summarizing their legal theories, they say that Credit Ninja attempted to obtain credit on their behalf "on substantially the same terms that are available to the general public" and "while operating a fraud or deception on [plaintiffs] and [lenders] in connection with the offer or sale of the services of a [credit services organization]." Dkt. 11, ¶ 137. These allegations don't state a claim because they are simply a restatement of the relevant statutory provisions. "[A] formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs must allege enough facts to plausibly suggest that they are entitled to relief. *Id.* at 557. Plaintiffs plead no facts showing that Credit Ninja attempted to broker loans for them, charged them for a referral, or misled them.

Plaintiffs do plausibly allege that Credit Ninja wasn't registered with the state of Wisconsin. The Wisconsin Consumer Act provides a private right of action to enforce its provisions. Wis. Stat. § 425.301(2). But, as Credit Ninja notes, plaintiffs don't plead any facts to show that they were harmed by the alleged statutory violation. They don't allege that they paid Credit Ninja for credit services or that Credit Ninja caused them to purchase credit. Although Credit Ninja doesn't expressly frame the issue in this way, the court takes Credit Ninja to contend that plaintiffs do not have standing to bring this claim. To have standing to bring a lawsuit in federal court, a plaintiff must suffer a "concrete and particularized injury" that is traceable to the defendant's conduct. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs cannot sue Credit Ninja merely because it wasn't registered; they must allege facts to show that Credit Ninja's status as an unregistered credit services organization harmed

6

them in some way. Put another way, "plaintiffs must be able to sufficiently answer the question: What's it to you?" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (internal quotation marks omitted). But plaintiffs don't explain how Credit Ninja's failure to register as a credit services organization affected them.

Plaintiffs ask for leave to amend their complaint, and the court will grant the request. Plaintiffs could plausibly plead additional facts to show that Credit Ninja violated the WCA and that those violations caused them a concrete injury. The court will dismiss plaintiffs' WCA claims without prejudice and give them a short time to amend their complaint.

## B. Clarity's motion to dismiss

Defendant Clarity Services moves to dismiss the case under Rule 12(b)(5) for insufficient service of process. Under Rule of Civil Procedure 4(m), a defendant must be served within 90 days after the complaint is filed. When a case is removed from state court, the 90-day window begins to run on the date of removal. *UWM Student Ass'n v. Lovell,* 888 F.3d 854, 858 (7th Cir. 2018). The case was removed to this court on July 2, 2021. That means plaintiffs had to serve Clarity by September 30, 2021. Plaintiffs didn't achieve service on Clarity until October 7, 2021, seven days later.

Plaintiffs don't explain why they failed to achieve timely service, so they haven't shown that they had good cause for the delay. But even if there is no good cause, a district court may, in its discretion, retroactively extend the time for service. *Coleman v. Milwaukee Bd. of Sch. Dirs.*, 290 F.3d 932, 934 (7th Cir. 2002); *Batiste v. McCullough*, No. 12 CV 7863, 2014 WL 6846011, at *3 (N.D. Ill. Dec. 4, 2014) (granting retroactive extension of time and collecting cases). Here, Clarity had actual notice of the suit soon after plaintiffs' deadline to achieve service, and Clarity suffered minimal prejudice from a seven-day delay. That short delay does not merit

dismissing the case. The court will grant plaintiffs a retroactive 28-day extension to the deadline.

But there is another problem with plaintiffs' claims against Clarity. A review of the complaint shows that plaintiffs' allegations are nearly identical to the allegations made by some of the same plaintiffs—all represented by the same counsel as this case—in three other cases filed against Clarity. *See Shockley v. Clarity Services, Inc.*, No. 21-cv-434-jdp; *Shockley v. Clarity Services, Inc.*, No. 21-cv-444-jdp; *Haas v. Easy Cash ASAP, LLC*, No. 21-cv-680-jdp. In those cases, the court concluded that the plaintiffs had pleaded themselves out of court by alleging facts to show that Clarity had reason to believe that lenders requested their reports for a lawful purpose. *See Shockley,* 2022 WL 2438555 (W.D. Wis. July 5, 2022). As in that case, the plaintiffs here allege that lenders represented in their agreements with Clarity that they would request and use consumer reports only for lawful purposes, Dkt. 11, ¶ 122, and that Clarity relied on the lenders' promise that they had a permissible purpose to obtain the report, *id.* at ¶ 129.

A court may dismiss a claim on its own motion, *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997), under the same standards that apply to a Rule 12(b)(6) motion to dismiss, *Diedrich v. Ocwen Loan Servicing, LLC,* 839 F.3d 583, 588 n.3 (7th Cir. 2016). But the court must first notify the parties of its intentions and "allow[] them an opportunity to cure the defect in the complaint or to respond." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006). So the court will give plaintiffs a short time to show cause why the claim against Clarity should not be dismissed.

ORDER

IT IS ORDERED that:

1. Defendant Credit Ninja's motion to dismiss, Dkt. 16, is GRANTED in part and DENIED in part. Plaintiffs' WCA claims are DISMISSED without prejudice. The motion is otherwise DENIED. Plaintiffs may have until August 29, 2022, to file an amended complaint that addresses the deficiencies in their Wisconsin Consumer Act claim.

2. Plaintiffs' motion to strike, Dkt. 38, is DENIED.

3. Defendant Clarity Service's motion to dismiss for insufficient service of process, Dkt. 21, is DENIED.

4. Plaintiffs may have until August 29, 2022, to show cause why their claims against Clarity should not be dismissed.

Entered August 15, 2022.

                                  BY THE COURT:

                                  /s/

                                  _____

                                  JAMES D. PETERSON
                                  District Judge